

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

August 28, 1996

Mr. David W. Myers
Executive Director
Texas Commission for the Deaf
and Hearing Impaired
P.O. Box 12904
Austin, Texas 78711

Opinion No. DM-411

Re: Use of an interpreter for deaf and hearing-impaired persons in administrative and judicial proceedings    (RQ-786 )

Dear Mr. Myers:

You have asked this office to consider certain questions regarding the use of an interpreter for deaf and hearing-impaired persons in administrative and judicial proceedings. Your particular concerns relate to three issues: who may receive such services, what qualifications are required for one who provides such services, and who must pay for the provision of court-mandated services.

Your questions center on two incidents, and this opinion will therefore respond to your request in that context. You first ask about the provision of an interpreter who was not a qualified interpreter within the meaning of section 21.003 of the Civil Practice and Remedies Code to the deaf uncle of a child involved in a juvenile detention hearing. You ask in the second instance about the provision of an interpreter to a grand juror. We conclude that the Americans with Disabilities Act, 42 U.S.C. §§ 12101 through 12213, would most likely be construed by a court to require that a deaf or hearing-impaired grand juror be provided with a qualified interpreter as defined by article 38.31(g)(2) of the Code of Criminal Procedure. On the other hand, we conclude that whether a deaf custodial relative not included within the list of parties to a juvenile hearing pursuant to section 51.02(10) of the Family Code was entitled to a qualified interpreter would present a closer question.

The Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 through 12213, provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Qualified individual" is defined in the statute as "an individual with a disability, who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation

barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2).

Cases from a variety of jurisdictions make plain that the court system is a public entity to which, under the ADA, handicapped persons who can reasonably be accommodated must be allowed access. *Galloway v. Superior Court*, 816 F. Supp. 12, 19 (D.D.C. 1993); *see also New York v. Caldwell*, 603 N.Y.S.2d 713, 714 (N.Y. Crim. Ct. 1993); *New York v. Green*, 561 N.Y.S.2d 130, 133 (Westchester Cty. Ct. 1990). The crucial question for both the situations about which you ask, then, is whether Texas law sufficiently accommodates the disabled persons involved in them to permit those persons the level of access required by the ADA.

In the first instance, we must consider whether a qualified interpreter must be provided for the custodial relative of a child involved in a juvenile detention hearing. Such a hearing is civil rather than criminal in nature. *In re V.R.S.*, 512 S.W.2d 350, 355 (Tex. App.--Amarillo, 1974 no writ). Accordingly, it is governed by the Civil Practice and Remedies Code. By the terms of section 21.002 of the Civil Practice and Remedies Code, "a deaf person who is a party or witness [in a civil case] is entitled to have the proceedings interpreted by a court appointed interpreter." In answer to the question of qualifications, such an interpreter "must hold a current Reverse Skills Certificate, Comprehensive Skills Certificate, Master's Comprehensive Skills Certificate, or Legal Skills Certificate issued by the National Registry of Interpreters for the Deaf or a current Level III, IV, or V Certificate issued by the Board for Evaluation of Interpreters." Civ. Prac. & Rem. Code § 21.003.

For the purposes of a juvenile detention hearing, "'Party' means the state, a child who is the subject of proceedings . . . , or the child's parent, spouse, guardian, or guardian ad litem." Fam. Code § 51.02(10). "A basic principle of the code is that every child who appears before the juvenile court must have the assistance of some friendly, competent adult who can supply the child with support and guidance." *Turner v. State*, 796 S.W.2d 492, 496 (Tex. Civ. App.--Dallas 1990, no writ); see also In re Honsaker, 539 S.W.2d 198, 200-01 (Tex. Civ. App.--Dallas 1976, writ ref'd n.r.e.).

The hearing-impaired uncle of the juvenile in the instant case, so far as we can determine from the documentation you provide, was not called as a witness in the hearing. He was apparently not the child's guardian. Nor, so far as it appears, was he appointed the child's guardian ad litem, though that is the remedy the Family Code provides when a parent or guardian is not available as the "friendly, competent adult" it contemplates. *Turner v. State*, 796 S.W.2d at 496; *In re Honsaker*, 539 S.W.2d at 201. Had he been

either a witness or, as the guardian or guardian ad litem, a party, the uncle would clearly have been entitled under section 21.002 of the Civil Practice and Remedies Code to a qualified interpreter.

Since the uncle in this case was neither a witness nor the guardian of the child, it has been suggested that this office either deem him a party by reading the definition of "party" in section 51.02(10) of the Family Code to include those persons who are required to receive notice of such hearings under section 53.06 of the Family Code, or in the alternative find that failure to provide him with a qualified signer as defined by section 21.003 of the Civil Practice and Remedies Code violates the Americans with Disabilities Act.

Section 53.06 of the Family Code requires the court to issue summons to a juvenile detention hearing to "(1) the child named in the petition; (2) the child's parent, guardian, or custodian; (3) the child's guardian ad litem; and (4) any other person who appears to the court to be a proper or necessary party to the proceeding." It has been suggested to us that we read the list of persons here as expanding the meaning of "party" in section 51.02(10), apparently because of the reference to "custodian" and to "a proper or necessary party."

We do not think that section 53.06 can reasonably be enlarged to hold that the "custodian" of a child is always a "proper or necessary party" to a detention hearing. Nor do we read the case cited to us in support of this proposition, *Adair v. Kupper*, 890 S.W.2d 216 (Tex. App.--Amarillo 1994, no writ), as requiring this result.

In Adair the issue was not whether the parents of the minor child involved in the hearing were necessary parties. The state conceded as much. 890 S.W.2d at 218. Indeed, the state conceded that the parents were parties under section 51.02(10). Id. The sole issue was whether people who had been hailed into court and told that the proceedings would affect their rights had a right to be heard through their counsel. Neither Adair nor section 53.06 represents an expansion of the familiar meaning of the notion of "proper or necessary party," as set forth in, for example, *Texas Jurisprudence*:

> All persons having or claiming a direct interest in the object and subject matter of a suit, and whose interest will necessarily be affected by any judgment rendered therein, are not only proper parties, but are necessary, and may be indispensable, parties. *Necessary parties are those persons who have such an interest in the controversy that a final judgment or decree cannot be made without affecting their interests or leaving the controversy in such a*

*condition that its final adjudication may be wholly inconsistent with equity and good conscience.*

57 TEX. JUR. 3D *Parties* § 39 (emphasis added).

Though, as we have said, we lack sufficient factual information to judge what was the case in the particular incident to which you refer, it may be that in that case the custodial uncle ought to have been regarded as a proper or necessary party. However, even were that the case, that would not mean as a matter of law that all persons similarly situated were proper or necessary parties to juvenile detention hearings. Only such parties, or witnesses, are entitled to qualified interpreters under section 21.002 of the Civil Practice and Remedies Code. The court, under section 53.06, is given the authority to deem any person a proper or necessary party. If it does so, that person is entitled to a qualified interpreter; if it does not, and that person is not a party under section 21.002, he or she is not so entitled.

In the event that we do not view a custodial uncle in the situation presented to be a party for the purposes of section 21.002, we have been asked to find that the statutory restriction of qualified interpreters to participants in the hearing violates the Americans with Disabilities Act. It is suggested that failing to provide a qualified interpreter to a custodial relative who is not a party to the proceeding violates that person's right of access to the court system.

One brief we have received argues that a spectator at a court proceeding enjoys under the ADA "a right of full access for . . . public trials and hearings," which right--it suggests without directly so stating--would require the availability of interpreters for deaf or hearing-impaired spectators. We are, however, unaware of any court's having held that the ADA requires the routine availability of interpreters for deaf or hearing-impaired spectators, and absent such authority we decline to read the act so broadly.

Having declined to read the ADA so as to require the provision of interpreters to spectators, we believe that the statutory scheme already in place suffices to insure that actual participants in legal controversy--parties and witnesses, in this instance--will have the full access to the courts which 42 U.S.C. § 12132 requires. That statutory scheme may, of course, be misapplied in particular instances. But we are charged to consider not whether such misapplications may occur, but whether the scheme itself enables citizens to exercise their personal right of access to the courts.

In this case, the relevant parties to the proceeding are defined by section 51.02(10) of the Family Code--the state, the child, the parents, the guardian, and the guardian ad

litem. All such parties, under section 21.002 of the Civil Practice and Remedies Code, are legally entitled to an interpreter appointed by the court. The skills and qualifications of such an interpreter are defined by section 21.003 of the Civil Practice and Remedies Code. Such an interpreter must be afforded to any "proper or necessary party" under section 53.06 of the Family Code whose rights may be affected by the proceeding. We believe that the scheme we have outlined here is adequate as a matter of law to protect the rights of all participants in the proceeding to access to the court system as required by the Americans with Disabilities Act. We do not believe that a custodial relative who is not a party or witness to such a proceeding as this under the statute must, as a matter of law, be provided with an interpreter whose qualifications are defined by section 21.003 of the Civil Practice and Remedies Code.

The legislature may, of course, take the view that the aim of access to the courts would be better served by including custodial relatives within the list of parties to a juvenile detention hearing to be found at section 51.02(10) of the Family Code. Such a decision is constitutionally delegated to that body. This office is only empowered to say that such a decision is not, in our view, compelled by the Americans with Disabilities Act.

On the other hand, we do believe that a court would be likely to hold that, even though Texas law may not now require it, a grand juror must, under the terms of the ADA, be provided with the service of an interpreter whose qualifications were the same as those mandated for a deaf defendant or witness by article 38.31(g)(2) of the Code of Criminal Procedure.

A number of cases have dealt with the rights of handicapped citizens under the ADA to participate in the justice system as jurors. In *Galloway v. Superior Court*, 816 F. Supp. at 19, the federal district court struck down the policy of excluding all blind persons from jury duty followed by the District of Columbia Superior Court on the grounds that it violated both the ADA and the Rehabilitation Act of 1973, 29 U.S.C. § 794. In *New York v. Caldwell*, 603 N.Y.S.2d at 714, the Criminal Court of the City of New York found that the lower court had an obligation under the ADA to "reasonably accommodate" a juror with limited vision, and that the participation of that juror in the trial did not deny the defendant due process. In *New York v. Green*, 561 N.Y.S.2d at 133, the court noted that the ADA, though not effective as of the instant date, counseled against a peremptory strike of a juror who was hearing-impaired.

On the basis of these cases, we believe that a court faced with the issue of whether a deaf or hearing-impaired person must be provided with a qualified interpreter would most likely hold both that such a person must be allowed access to the court system and the right to serve as a juror, as required by 42 U.S.C. § 12132, and that the provision of a

qualified interpreter would be the provision of the sort of "auxiliary aids and services" contemplated by 42 U.S.C. § 12131(2). We believe that such a court would take into account the provisions of Texas law which provide for the furnishing of interpreters to witnesses and defendants in criminal proceedings, Code of Criminal Procedure, article 38.31(a), and which govern the qualifications of such interpreters, Code of Criminal Procedure article 38.31(g)(2). We believe that the court, having done so, would find that article 38.31(g)(2)'s specifications ought to govern the qualifications for interpreters for grand jurors as well.

We note that the cases we have cited deal with the issue of access to petit rather than grand juries. Our research has not disclosed, nor have we been apprised of, any post-ADA cases involving the right of handicapped citizens to participate on the grand jury. *But see Eckstein v. Kirby*, 452 F. Supp. 1235 (E.D. Ark. 1978) (pre-ADA case holding that Arkansas statute disqualifying deaf citizens from service on petit and grand juries did not violate Due Process or Equal Protection Clause of Fourteenth Amendment); *Cooligan v. Celli*, 492 N.Y.S.2d 287 (N.Y. App. Div. 1985) (pre-ADA case holding that deaf person could be prohibited from serving on grand jury because of New York statute permitting only grand jurors in grand jury room). However, we know of no distinction in principle between grand and petit juries which would permit the conclusion that citizens have a right to serve on the latter, but not the former.

We note that Texas statutes do not purport to disqualify deaf or hearing-impaired citizens from service on the grand jury. The qualifications for grand juror are laid down in article 19.08 of the Code of Criminal Procedure. They require that to qualify as a grand juror, a person must be a citizen of Texas and the county in which he is to serve, qualified to vote in that county, able to read and write, not convicted of any felony nor under indictment for theft or any felony, not related within a certain degree to any other grand juror, not have served as a grand juror or jury commissioner within the year, and not be a complainant before the grand jury. Nothing in these qualifications precludes a deaf or hearing-impaired person from service on a grand jury.

We do note, however, one area of potential conflict between the Texas statutes, particularly article 20.011(b) of the Code of Criminal Procedure, added by the Seventy-fourth Legislature, and this interpretation of the ADA. See Act of May 24, 1995, 74th Leg., R.S., ch. 1011, § 1, 1995 Tex. Sess. Law Serv. 5066, 5066. Article 20.011(b) provides that "Only a grand juror may be in a grand jury room while the grand jury is deliberating." There may be cases in which a deaf or hearing-impaired grand juror must be assisted by an interpreter in participating in deliberations. If that is the case, and there is a clash between the requirements of the federal statute and article 20.011(b), the ADA requirements must, under the Supremacy Clause, prevail. *See* U.S. Const. art. VI, cl. 2.

For the same reasons that we found in a recent opinion, DM-392 (1996), that the presence of an interpreter who had been sworn not to interfere in nor violate the secrecy of petit jury deliberations would not violate the due process rights of a criminal defendant, we believe that the presence of an interpreter similarly sworn in the grand jury room will not violate the due process rights of any subject of grand jury investigation. So long as these constitutional rights are properly protected, we believe that a grand juror who requires the services of an interpreter to participate in deliberations must be provided with those services, even if such provision conflicts with article 20.011(b). Of course, in those instances in which a deaf or hearing-impaired juror · could fully participate in the deliberations of the grand jury without the presence of his or her interpreter, article 20.011(b) would remain in full effect. This question is within the discretion of the presiding judge.

You ask, finally, who must bear the cost for "interpreters required in the provision of court mandated services." Under the regulations adopted pursuant to the ADA, in particular title 28 of the Code of Federal Regulations, section 35.130(f),

> [a] public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

The gloss placed upon this regulation by the Equal Employment Opportunity Commission and Department of Justice's analysis in the Americans with Disabilities Act Handbook is as follows:

> Several commenters asked for clarification that the costs of interpreter services may not be assessed as an element of 'court costs.' The Department has already recognized that imposition of the cost of courtroom interpreter services is impermissible under section 504 [of the Rehabilitation Act]. The preamble to the Department's section 504 regulation for its federally assisted programs states that where a court system has an obligation to provide qualified interpreters, 'it has the corresponding responsibility to pay for the services of the interpreters.' . . . Accordingly, recouping the costs of interpreter services by assessing them as part of court costs would also be prohibited. [Citation omitted].

EQUAL EMPLOYMENT OPPORTUNITY COMM'N & U.S. DEP'T OF JUSTICE, AMERICANS WITH DISABILITIES ACT HANDBOOK II-45 (1991).

To the extent, therefore, that interpreter services are required to make court mandated services available to deaf or hearing-impaired persons on a non-discriminatory basis, the costs of such services may not be imposed on those persons by taxing them as court costs.[1]

---

[1]We do not consider here the question of whether a court may tax a non-disabled party with, for example, the costs of an interpreter for a deaf or hearing-impaired witness.

## S U M M A R Y

Parties and witnesses to juvenile detention hearings who are deaf or hearing-impaired, like all such parties and witnesses in civil cases, are entitled under section 21.002 of the Civil Practice and Remedies Code to the services of a qualified interpreter, as defined by section 21.003 of the Civil Practice and Remedies Code. For the purposes of a juvenile detention hearing, section 51.02(10) of the Family Code defines "party" as including "the state, a child who is the subject of proceedings . . . , the child's parent, spouse, guardian, or guardian ad litem." A custodial relative not included within section 51.02(10)'s list of parties who is not a witness to the proceedings is not entitled as a matter of law to the services of an interpreter under Texas statutes, nor does the Americans with Disabilities Act, 42 U.S.C. §§ 12101 through 12213, require the provision of an interpreter to such a person.

A grand juror must be provided with the services of an interpreter whose qualifications are the same as those mandated for an interpreter for a deaf defendant or witness by article 38.31(g)(2) of the Code of Criminal Procedure, in order to guarantee the grand juror the right of access mandated by 42 U.S.C. § 12132.

In the event that the services of the interpreter are necessary to aid the grand juror in deliberation, the Americans with Disabilities Act would require the provision of such services in the grand jury room despite the strictures of article 20.011(b) of the Code of Criminal Procedure.

To the extent that interpreter services are required in order to make court-mandated serices available to deaf or hearing-impaired persons on a nondiscriminatory basis, the costs of such services may not be imposed on such persons by taxing them as court costs.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by James E. Tourtelott
Assistant Attorney General