*3 OPINION OF THE COURT
Chief Judge Wachtler.
The question presented in this case is whether a hearing-impaired person is, by reason of that impairment, disqualified from service as a juror. We agree with the courts below, based on their factual determinations concerning the abilities of the prospective juror and the interpreter assigned to assist him, that the prospective juror’s deafness did not render him "incapable of performing in a reasonable manner the duties of a juror” (Judiciary Law § 510 [3]).
I.
Defendant was tried and convicted on a charge of criminal sale of a controlled substance in the third degree (Penal Law § 220.39) for selling $20 worth of cocaine to an undercover police officer. The events relevant to this appeal, however, occurred before the presentation of any evidence and the central character is one who took no part in the trial. Alec Naiman was, at the time of trial, 29 years old, a student at New York University and a resident of New York County. He was summoned for jury duty and appeared as part of the pool of prospective jurors for defendant’s trial. Mr. Naiman speaks English, reads English and writes English, but he cannot hear.[1] Although he is able to read lips, he was assisted during jury selection by a court-appointed sign language interpreter. He explained that, through lip-reading, "I can see everything about the person, I can feel the tone, I can see the tone, the inflection of the person, but I can never get full verbatim. That is why I prefer to use the interpreter.” Mr. Naiman and the interpreter communicated using signed English, a signing technique that transmits the speaker’s words literally, without any intervening translation.[2] The interpreter assured the court that she was familiar with and would abide by the code of ethics for sign language interpreters and that she would limit her role to that of a "communications facilitator.” Defendant challenged the prospective juror for cause, assert *4 ing among other reasons that the juror’s hearing impairment would prevent him from judging the witnesses’ credibility and that the interpreter’s presence in the jury room would inhibit deliberations and violate the confidentiality of the deliberative process. Supreme Court rejected the challenge, concluding that the juror’s deafness would not prevent him from performing the duties of a juror in a reasonable manner and that the concerns about the interpreter’s presence in the jury room were unfounded (see, People v Guzman, 125 Misc 2d 457).
Defendant nevertheless excluded the prospective juror by exercising a peremptory challenge. He exhausted his remaining peremptory challenges before jury selection was complete and thus preserved for appellate review his challenge to the court’s ruling (see, CPL 270.20 [2]; People v Blyden, 55 NY2d 73, 76). As noted, the ensuing trial resulted in a guilty verdict.
The Appellate Division affirmed the conviction, adopting the reasons stated by Supreme Court with respect to the juror qualification issue. That is the only issue raised on appeal to this court.
II.
Under prior law, which required among other qualifications that a juror "[b]e in the possession of his natural faculties” (Judiciary Law former § 504 [3]; § 596 [3]; § 662 [3] [repealed L 1977, ch 316, § 1]), a profound sensory impairment automatically disqualified a juror (see, Matter of Lewinson v Crews, 28 AD2d 111, affd on opn below 21 NY2d 898, appeal dismissed 393 US 13). In 1977, juror qualification requirements were consolidated in Judiciary Law § 510 (L 1977, ch 316, § 2) but, although the language of the statute was otherwise changed, the reference to "natural faculties” was retained (Judiciary Law former § 510 [3]). In 1983, however, that requirement was replaced by the current language of section 510 (3) (L 1983, ch 474, § 1). The statute now provides that a juror must "[n]ot have a mental or physical condition, or combination thereof, which causes the person to be incapable of performing in a reasonable manner the duties of a juror.”
The avowed purpose of the amendment was to end the automatic exclusion of disabled persons by "shifting the emphasis from pre-determination to the capability of the individual to perform the duties of a juror in a reasonable manner” (see, Legislative Mem, an act to amend the Judiciary Law in relation to qualifications for jury duty — purpose of the bill, *5 Bill Jacket, L 1983, ch 474). The amendment was prompted in part by a concern that the exclusion of disabled persons from jury service contravened Federal regulations implementing section 504 of the Rehabilitation Act of 1973 (29 USC § 794), which prohibits handicap-based discrimination in programs and activities that receive Federal financial assistance.
Thus, there is no longer a blanket statutory prohibition against jury service by those, such as the juror in this case, whose hearing is impaired to a profound degree. The question in each case, assuming that the prospective juror is otherwise qualified, must be whether the individual is capable of doing what jurors are supposed to do. The statute requires no more; defendant’s constitutional rights to a fair trial and to trial by jury demand no less.
At a minimum, a juror must be able to understand all of the evidence presented, evaluate that evidence in a rational manner, communicate effectively with the other jurors during deliberations, and comprehend the applicable legal principles, as instructed by the court. In addition, any accommodation that may be necessary to allow the juror to fulfill these duties —in this case, for example, the presence of a sign language interpreter during the trial and deliberations — must not itself interfere with defendant’s fundamental trial rights. In short, although the citizens of this State have a civil right to serve as jurors (see, People v Kern, 75 NY2d 638), this right is conditioned on the individual’s ability to carry out the primary function of the jury — to provide a fair trial. We conclude that the juror’s impairment was not in that respect a disability.
III.
As with most juror qualification questions, the determination whether a hearing-impaired person can provide reasonable jury service in a given case must be left largely to the discretion of the trial court, which can question and observe the prospective juror and the interpreter during the voir dire (see, People v Williams, 63 NY2d 882, 885). Here, in light of the juror’s ability to speak English fluently, read lips and communicate readily in signed English, the trial court concluded that he would "do as fine a job or better than many of the hearing jurors” (People v Guzman, 125 Misc 2d 457, 467, supra). In addition, the court was satisfied that the interpreter was competent and could abide by ethical constraints and the *6 court’s instructions prohibiting participation in the jury’s deliberations.
Defendant contends, nonetheless, that the prospective juror was incapable of performing the duties of a juror in several respects. First, he challenges the juror’s ability to perceive and understand the evidence on the ground that an interpreter might make mistakes in transmitting the testimony to the juror or might miss certain testimony if more than one person speaks at a time. Given the trial court’s findings concerning the abilities of this juror and the interpreter, however, it seems unlikely that mistakes or omissions would occur with significantly greater frequency than they do with hearing jurors, who may be distracted or inattentive at times. Furthermore, material discrepancies between oral testimony and the signed transmission could be detected with the juror’s lip reading ability or would surface during deliberations and could be resolved by having the testimony read back.
Defendant also contends that, even with a signer, the juror could not adequately evaluate oral testimony because he would miss vocal inflections, which provide important clues about a witness’s credibility. We disagree. For one thing, as the trial court noted, a qualified signer is able to convey much about the speaker’s delivery, including the speed, pauses, modulations and other variations (125 Misc 2d, at 466). Furthermore, the juror testified that he was able to use visual clues to determine the tone and inflection of the speaker. More importantly, however, there is no reason to suppose that perception of vocal inflections is a necessary part or a superior method of assessing credibility. Each juror is expected to bring to the courtroom his or her own method of sorting fact from fiction — the same method the juror relies on in conducting everyday affairs. The factors that each juror will rely on to evaluate the trustworthiness of a statement will be a function of that juror’s experience. This juror’s experience has been to make such determinations without vocal clues. Nothing but speculation suggests that this has been a disadvantage. If anything, his apparent success suggests that for him the ring of truth need not be heard to be recognized.
Finally, defendant contends that the juror should have been excluded because he could not serve without a sign language interpreter being present during deliberations. Certainly, the general rule is that nonjurors are not allowed in the jury room during deliberations. This rule protects the jury from *7 outside influence, promotes uninhibited discussion and maintains secrecy. In our view, however, the rule is sufficiently flexible to allow the presence of a signer where that is necessary to accommodate a hearing-impaired juror and where other safeguards are implemented to protect the interests on which the rule is based.
Certain outsiders, such as a bailiff or other court official, may inhibit or influence the jury by their mere presence. They may be perceived as having pertinent legal knowledge or as being aligned with the law enforcement community. In either case, their presence could have an adverse impact on the deliberations. The signer, on the other hand, is a neutral figure, associated only with a fellow juror, and her presence should not have such an effect. Of course, the presence of any nonjuror creates a danger that he or she will participate in the deliberations. But the signer and the jurors can be instructed that such participation is improper and that any breach should be reported to the court. We assume that the jury can be trusted to follow those instructions as they are trusted to follow all others. For similar reasons, the signer should be sworn to keep the confidences of the jury room. This, together with ethical constraints and the signer’s hope of future employment in this capacity should provide sufficient assurance that the signer will not make public the proceedings in the jury room.
For these reasons, we conclude that the trial court did not err in denying defendant’s challenge for cause. The order of the Appellate Division, therefore, should be affirmed.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed.

. The precise degree of Mr. Naiman’s impairment v/as not explored during the voir dire. Supreme Court’s decision describes him as "profoundly deaf,” and we assume for purposes of our analysis that he is completely unable to hear.

. We note, therefore, that this appeal does not require us to determine whether a juror dependent on a nonliteral sign language, such as American Sign Language, would be qualified under our statutory requirement that a juror be English-speaking (see, Judiciary Law § 510 [5]).