OPINION OF THE COURT
John Carey, J.
The court concludes herein that Soison-like[1] protection should be afforded to a hearing impaired would-be juror and therefore disallows a proposed peremptory challenge by a prosecutor intended to eliminate a juror solely because she cannot hear.[2]
*667 Defendant was charged with unauthorized use of a vehicle in the second degree, criminal possession of stolen property in the fourth degree (two counts) and unlawful possession of marihuana. Jury selection took place on September 24 and 25, 1990. Among the prospective jurors who were sent to the courtroom by the Commissioner of Jurors was one who told the court and counsel, through a sign language interpreter provided by the Commissioner’s office, that she has been deaf since birth. Through the interpreter, who was sworn to interpret accurately between English and sign language, the juror answered all questions put to her by the Judge, the Assistant District Attorney and defense counsel.
The hearing impaired juror was not challenged for cause. However the Assistant District Attorney stated that he would challenge her peremptorily. The court inquired whether the Assistant District Attorney had any reason other than the juror’s deafness. He said he had no other reason. The court disallowed the peremptory challenge, and the juror was sworn and seated.
Before delivering preopening remarks to the entire jury, the court administered the following oath to a replacement interpreter who had also been provided by the Commissioner’s office: "Do you swear that you will accurately translate from the English language into the sign language understood by the juror [name deleted], who is deaf, and from that language as used by her into the English language, and that during the deliberations of the jury, while present in the jury room, your communications with her and the other jurors will be limited to translating for her what the other jurors say and translating for them what she says, so that you will not otherwise participate yourself in the jury’s deliberations, and that you will keep secret all that you hear in the jury room unless ordered differently by the court or unless authorized by [name deleted] after the trial is finished to disclose anything said by her during the deliberations.”
The second half of the oath was patterned on admonitions of the Court of Appeals in People v Guzman (76 NY2d 1, 7 *668 [1990]).[3] That case involved a challenge for cause where the ability of the juror to participate was closely scrutinized. Here no question was raised concerning the juror’s ability. Only the isolated fact of her deafness was mentioned. Thus no disability-neutral reason for the peremptory challenge was given. This court was therefore alerted to the Court of Appeals holding in Guzman that "there is no longer a blanket statutory prohibition against jury service by those, such as the juror in this case, whose hearing is impaired to a profound degree” (People v Guzman, supra, at 5).[4]
Section 11 of article I of the NY Constitution provides: "No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.” The juror in question was not singled out as a member of any of the categories specified in the second sentence quoted. However, it is still possible for her to have been denied equal protection under the first sentence if she was excluded from serving as a juror for no reason other than her impaired hearing.[5]
Jury service is a privilege of citizenship secured by article I, § 1 of this State’s Constitution. Further, it is the declared policy of the State that "all eligible citizens shall have the opportunity to serve on grand and petit juries in the courts of this state” (Judiciary Law § 500). The Court of Appeals in Guzman (supra), held that deafness alone does not necessarily make an otherwise qualified individual ineligible to serve as a juror so long as adequate interpretation using "signed English” is available (see also, United States v Dempsey, 830 F2d 1084 [10th Cir 1987]).
This State’s constitutional right to equal protection is directed against State action. (People v Kern, 75 NY2d 638, 653 *669 [1990].) State action is present here since it was an Assistant District Attorney who sought to peremptorily challenge the juror.[6]
Disabled persons in general and hearing impaired persons in particular may constitute a "suspect classification”[7] in view of the protections afforded them by New York statutes (cf., Executive Law §§290, 292 [21], and § 296 [14]; Civil Rights Law § 47 and Judiciary Law § 390; but see, Eckstein v Kirby, 452 F Supp 1235 [ED Ark 1978] [State statute disqualifying persons whose hearing is substantially impaired from serving on petit and grand juries does not violate Due Process and Equal Protection Clauses of the Fourteenth Amendment of the US Constitution]). If so classified, State action affecting them as a group would be subject to an exacting degree of judicial scrutiny. Similarly, strict judicial scrutiny. Similarly, strict judicial scrutiny may be appropriate if individuals have a fundamental right to serve as jurors, as is possible given the explicit provisions protecting that right found in the Constitution and statutes. The court, however, need not decide these issues at this time in view of its decision below.
The Assistant District Attorney’s effort to bar the hearing impaired person from jury service must, at the very least, have a rational basis. (Cf., Matter of Levy, 38 NY2d 653 [1976]; Winkler v Spinnato, 134 AD2d 66 [2d Dept 1987], affd 72 NY2d 402 [1988], cert denied 490 US 1005 [1989]; Matter of Board of Educ. v Ambach, 107 Misc 2d 830,839 [Sup Ct, Albany County 1981], mod 90 AD2d 227 [3d Dept 1982], affd 60 NY2d 758 [1983], cert denied 465 US 1101 [1984].) In view of the holding in Guzman (supra), that deafness per se does not support a challenge for cause and the Assistant District Attorney’s admission that his peremptory challenge here was based solely on the disability and not on any doubt of the juror’s ability to communicate, his proposed action was not rational and violated the juror’s right to equal protection under the State Constitution.
*670 Furthermore, the Americans with Disabilities Act of 1990 (Pub L 101-336) signed by the President on July 26, 1990, must also be heeded even if not yet effective, and whether or not it would apply to comparable situations in the future. Section 202 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.”
The definition in section 201 (2) of a "qualified individual with a disability” encompasses one who "with or without * * * the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.”
"Auxiliary aids and services” include, per section 3 (1) (A) of the Americans with Disabilities Act of 1990, "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments”.
The term "public entity” is defined by section 201 (1) (B) so as to include "any department, agency * * * or other instrumentality of a State or States or local government.” That would seem to include both the District Attorney’s office and this court, neither of which should contribute to keeping this juror from serving solely because of her deafness when no inability to serve has been even suggested. Although no indication has been found in the committee reports that Congress had the judiciary in mind, the words fit and should be taken to heart. As noted by the President in his statement upon signing the Americans with Disabilities Act, "[i]t signals the end to the unjustified segregation and exclusion of persons with disabilities from the mainstream of American life.” (1990 US Code Cong & Admin News 602 [Sept. 1990].)

. Batson v Kentucky, 476 US 79 (1986).

. Raison-like protections have been applied beyond race (see, e.g., People v Irizarry, 142 Misc 2d 793 [Sup Ct, Bronx County 1988] [State statutory and constitutional provisions preclude use of gender based peremptory challenges]; People v Kagan, 101 Misc 2d 274 [Sup Ct, NY County 1979] [use of peremptory challenges systematically to exclude jurors solely by reason of *667 their religion, where persons excluded are of same religion as defendant, deprived him of trial by his peers in violation of article I, § 1 of the NY Constitution]).

. The same oath was given to the original interpreter, who resumed her function at the time when presentation of evidence began. She stated that she would be using "signed English”, the technique approved by the Court of Appeals in People v Guzman (76 NY2d, at 3).

. The juror in People v Guzman (76 NY2d 1), was subsequently excluded by a defendant’s peremptory challenge, the propriety of which was apparently not questioned and was not before the appellate courts.

. Cfi, Note, Due Process: The Deaf and the Blind as Jurors, 17 New Eng L Rev 119 (1981), and Comment, Jury Selection: The Courts, the Constitution, and the Deaf, 11 Pac U 967 (1980).

. Even if it had been the defense counsel who challenged the juror, State action would still have been present since peremptory challenges are a right conferred by State statute and since it is the court in whose name the juror would have been dismissed (People v Kern, 75 NY2d 638, 656-657).

. The term "suspect” was long ago used by the United States Supreme Court in Korematsu v United States (323 US 214, 216 [1944]) to describe a classification based on race, but has since been extended to include classifications based on national origin and alienage. Classifying a group as "suspect” does not infer anything sinister about it. To the contrary, a group so classified is afforded special protection.