[959 NE2d 504, 935 NYS2d 567]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEAN A. GUAY, Appellant.

Argued October 12, 2011; decided November 15, 2011

## POINTS OF COUNSEL

*Kindlon Shanks and Associates*, Albany (*Terence L. Kindlon* and *Kathy Manley* of counsel), for appellant. I. The convictions should be reversed based on ineffective assistance of counsel. (*People v Baker*, 14 NY3d 266; *People v Benevento*, 91 NY2d 708; *People v Baldi*, 54 NY2d 137; *People v Caban*, 5 NY3d 143; *People v Dean*, 50 AD3d 1052; *People v Green*, 37 AD3d 615; *People v Fogle*, 10 AD3d 618; *People v Laraby*, 305 AD2d 1121; *People v Fleegle*, 295 AD2d 760; *People v Miller*, 11 AD3d 729.) II. The convictions should be reversed because the trial court removed a possibly hearing impaired prospective juror for cause without

conducting the necessary inquiry. (*People v Guzman*, 76 NY2d 1; *People v Cruz*, 46 AD3d 313; *People v Busreth*, 35 AD3d 965; *People v Santiago*, 277 AD2d 258; *People v Caldwell*, 159 Misc 2d 190; *Tennessee v Lane*, 541 US 509; *People v Cahill*, 2 NY3d 14.) III. The convictions should be reversed because two nonexpert witnesses were allowed to testify as to their expert opinion of the complainant's credibility. (*People v Crowell*, 278 AD2d 832; *People v White*, 184 AD2d 798; *People v Smith*, 127 AD2d 864; *People v Bennett*, 79 NY2d 464; *People v Ciaccio*, 47 NY2d 431; *People v Kozlowski*, 11 NY3d 223; *People v Ballerstein*, 52 AD3d 1192; *People v Eberle*, 265 AD2d 881; *People v Graham*, 251 AD2d 426; *People v Seaman*, 239 AD2d 681.) IV. The convictions should be reversed because of pervasive prosecutorial misconduct. (*People v Riback*, 13 NY3d 416; *People v Ballerstein*, 52 AD3d 1192; *People v Gordon*, 50 AD3d 821; *People v Gorghan*, 13 AD3d 908; *People v Wlasiuk*, 32 AD3d 674; *People v Harte*, 29 AD3d 475; *People v Brown*, 26 AD3d 392; *People v Liverpool*, 35 AD3d 506; *People v Anderson*, 35 AD3d 871; *People v De Vito*, 21 AD3d 696.)

*Andrew Wylie, District Attorney*, Plattsburgh (*Nicholas J. Evanovich* and *Miriam C. Healy* of counsel), for respondent. I. Defendant's complaints regarding the trial court's disposition of the People's for cause challenge to the prospective juror who is hard of hearing are not reviewable by the court. (*People v Guzman*, 76 NY2d 1; *People v Harrison*, 57 NY2d 470; *People v Gonzalez*, 55 NY2d 720; *People v Waters*, 90 NY2d 826; *People v Santos*, 86 NY2d 869; *People v Burke*, 72 NY2d 833; *People v Everson*, 100 NY2d 609.) II. Defense counsel opened the door to the otherwise impermissible opinion testimony. (*People v Lamphier*, 302 AD2d 864; *People v Conway*, 297 AD2d 398; *People v Melendez*, 55 NY2d 445; *People v Regina*, 19 NY2d 65; *People v Gonzalez*, 55 NY2d 720; *People v Waters*, 90 NY2d 826; *People v Santos*, 86 NY2d 869; *People v Burke*, 72 NY2d 833; *People v Everson*, 100 NY2d 609; *People v Baker*, 14 NY3d 266.) III. The prosecutor did not engage in misconduct; as such defendant was not denied his right to a fair trial. (*People v Hurley*, 75 NY2d 887; *People v Gill*, 54 AD3d 965; *People v Calabria*, 94 NY2d 519; *People v McCombs*, 18 AD3d 888; *People v Roberts*, 12 AD3d 835; *People v Russell*, 307 AD2d 385; *People v Layton*, 16 AD3d 978; *People v Tarantola*, 178 AD2d 768; *People v Colas*, 206 AD2d 183; *People v Halm*, 81 NY2d 819.) IV. Defendant was afforded meaningful representation by trial counsel. (*People v Benevento*, 91 NY2d 708; *People v Baker*, 14 NY3d 266; *People v Ellis*, 81 NY2d 854; *People v Rivera*, 71 NY2d 705; *People v Satterfield*, 66 NY2d 796; *People v Baldi*, 54 NY2d 137.)

**OPINION OF THE COURT**

GRAFFEO, J.

The primary issue in this appeal is whether Supreme Court abused its discretion when it dismissed a hearing-impaired prospective juror for cause. We hold that it did not based on the particular facts of this case.

I

Defendant Dean Guay discovered that he was the father of a child (whom we refer to as Jane) when the girl was four years old. He subsequently visited his daughter on alternate weekends and spent time with her in the summers. Defendant also vacationed with Jane and other members of his family at a summer camp in Clinton County.

At some point in August 2005, when Jane was seven years old, defendant picked her up from her mother's house for a scheduled week-long trip to the camp. While there, Jane woke up one night to find defendant crawling into the bed that she was occupying with other children. She went back to sleep but was awoken again when defendant removed her pants. He pulled Jane toward him, touched her chest and genital area, and then inserted his finger and penis into her vagina. Defendant stopped when his one-year-old son, who was also in the bed, woke up.

The next morning, defendant brought Jane and the other children to his mother's house for breakfast and afterwards defendant drove her home. During the trip, defendant did not speak to Jane but, upon arrival, defendant announced that he was not going to see her anymore. Defendant then terminated his relationship with his daughter.[1] Jane told her mother that defendant did not want to visit with her but did not disclose her father's sexual misconduct at that time because she did not comprehend that defendant's actions were wrong.

In May 2007, after attending an educational program at her school relating to sex-related issues, Jane realized that her father had engaged in inappropriate sexual contact with her. She then told a school counselor what had happened to her. The police were notified and Jane was interviewed by State Police Investigator Karen DuFour and Child Protective Services Caseworker Thom Schultz.

---

**1.** Defendant wrote a letter to Jane at some point and attempted to see her on one occasion but Jane's mother rebuffed his request to visit with the child.

Defendant was incarcerated when the authorities learned of Jane's accusations. On the day he was released from jail, Investigator DuFour met with him. After *Miranda* warnings were issued to defendant, Schultz engaged defendant in a discussion about his daughter's disclosures. Although defendant initially denied having any improper physical contact with his daughter, he eventually confessed that he crawled into the bed and sexually assaulted Jane, but he did not admit to penetrating her with his penis. Defendant also revealed that he terminated his relationship with Jane after the incident because he was "too embarrassed" or "too ashamed" of what he had done, so "it was easier just not to see her."

Defendant was indicted for first-degree rape, first-degree sexual abuse and endangering the welfare of a child. During jury selection, after groups of venire members were placed in the jury box for individual questioning, the trial court read introductory instructions to these prospective jurors and inquired if anyone had difficulty hearing. When venire member 1405 responded affirmatively, the court repeated the information. The prosecutor later asked whether any of the prospective jurors knew a person who had confessed to a crime that he or she did not commit. Venire member 1405 answered that he did and went on to explain that his son was incarcerated for drug possession. The prosecutor asked, "[d]id he admit to possessing the drugs? Did he make a confession?" Venire member 1405 replied "I don't know, I didn't go to any of the trial. I stayed away." The prosecutor responded, did "[y]ou feel that he was innocent?" and the prospective juror said "No."

Defense counsel apparently realized that venire member 1405 was having trouble comprehending the questions and asked him if he had "any problems hearing as long as we speak up?" He replied "[o]nce in a while you talk awfully low." Defense counsel remarked, "I have to be reminded to speak up. But you could sit on a jury throughout the course of the week? You don't think you would have any hearing problems as long as I speak up?" The prospective juror responded "I'm pretty good right here in the front" row of the jury box.

At the conclusion of this round of voir dire, the People moved to dismiss venire member 1405 for cause. The prosecutor noted that the panelist "had trouble hearing the [c]ourt" and that child victims frequently "have trouble speaking up" when they testify, which raised a concern that venire member 1405 could "miss critical parts of [Jane's] testimony." Defense counsel

opposed the request, arguing that the prospective juror had indicated that he would not have a problem hearing during the trial. Although Supreme Court agreed with defense counsel's characterization of venire member 1405's statements, the judge further explained

> "I think he's inaccurate in his answer because he indicated he had difficulty hearing certain things and by his nonverbal reactions to various questions you could tell that he was having difficulty hearing the three of us. I do think that and I think that the People make a valid point that children tend to be more soft spoken witnesses, and adults, all things considered, I think his hearing is a big enough problem [ ]here that it does disqualify him from serving as a juror."

The court therefore granted the People's challenge for cause.

At trial, the People's witnesses included a nurse practitioner who provided medical testimony regarding Jane's gynecological examination. She established that Jane's hymenal ring evidenced a disruption and scar tissue, that it was "not very probable" that the injury occurred naturally and that such a condition was consistent with "some blunt force of penetration" caused by a finger or a penis. Caseworker Schultz testified about defendant's confession. Defendant later claimed that he had lied to Schultz when he acknowledged sexually abusing Jane.

The jury convicted defendant on all counts. He was sentenced to an aggregate prison term of 20 years and 10 years of postrelease supervision. The Appellate Division modified by remitting for imposition of new periods of postrelease supervision but otherwise affirmed (72 AD3d 1201 [3d Dept 2010]). A Judge of this Court granted defendant leave to appeal (15 NY3d 750 [2010]) and we now affirm.

## II

Defendant contends that the trial court erred because it allegedly failed to engage in an adequate inquiry regarding venire member 1405's ability to serve on the jury and, rather than dismissing him for cause, the court should have accommodated his hearing impairment. According to defendant, the trial court's action violated the Judiciary Law and *People v Guzman* (76 NY2d 1 [1990]). The People submit that the trial court properly questioned the prospective juror and that his dismissal was not an abuse of discretion.

New York has long considered jury service to be a civil right that is a privilege and duty of citizenship protected by the State Constitution (*see e.g. People v Hecker*, 15 NY3d 625, 649 [2010], *cert denied* 563 US —, 131 S Ct 2117 [2011]; *People v Kern*, 75 NY2d 638, 651 [1990], *cert denied* 498 US 824 [1990]). A person's ability to serve as a juror, however, must be balanced against the accused's fundamental constitutional rights and the State's obligation to provide a fair trial. Among other requirements specified in Judiciary Law § 510, "[i]n order to qualify as a juror a person must . . . [b]e able to understand and communicate in the English language" (Judiciary Law § 510 [4]).[2]

When confronted with such a situation involving a prospective juror's hearing impairment, a court must determine whether the individual has the ability to "understand all of the evidence presented, evaluate that evidence in a rational manner, communicate effectively with the other jurors during deliberations, and comprehend the applicable legal principles, as instructed by the court" (*People v Guzman*, 76 NY2d at 5). If a judge is made aware of a reasonable accommodation that would allow a hearing-impaired prospective juror to fulfill these duties without interfering with the defendant's trial rights, such measures should be taken (*see id.*). In furtherance of the need to accommodate such prospective jurors, we recognized in *Guzman* that a hearing impairment does not per se preclude an individual from serving as a juror (*see id.*).

*Guzman* also acknowledged that trial courts have discretion to determine whether an auditory problem will unduly interfere with an individual's ability to fulfill the important functions that trial jurors perform. This determination, "[a]s with most juror qualification questions," must "be left largely to the discretion of the trial court, which can question and observe the prospective juror . . . during the voir dire" (*id.*).[3] Although the Appellate Division possesses the power to exercise its own discretion and substitute its judgment for that of the trial court, this Court lacks that authority. And when the Appellate

---

**2.** In the past, a prospective juror could be dismissed for cause on the basis of "a mental or physical condition, or combination thereof, which causes the person to be incapable of performing in a reasonable manner the duties of a juror" (Judiciary Law § 510 [former (3)]). This provision was repealed in 1995 and replaced with current subdivision (4) (*see* L 1995, ch 86).

**3.** We ultimately held in *Guzman* that it was not an abuse of discretion to allow a hearing-impaired juror to serve with the assistance of an interpreter who communicated using "signed English," which transmitted the speaker's words literally without any translation (*see* 76 NY2d at 7).

Division adopts a trial court's factual findings and the application of those facts to the applicable legal principles, as occurred here, that determination presents a mixed question of law and fact that we cannot overturn unless there is no record support for the trial court's conclusion.

In this case, we hold that Supreme Court did not abuse its discretion by granting the cause challenge to venire member 1405 because the record supported the determination that his hearing impairment would have unduly interfered with his ability to be a trial juror. It was readily apparent to the court and the parties that this panelist had trouble hearing the precise questions posed. After he asked the court to repeat its preliminary instructions, he incorrectly responded to an inquiry asking whether he knew a person who had falsely confessed to a crime. Despite his remark that he would not have difficulty if he remained in the front of the jury box, Supreme Court observed venire member 1405 during voir dire and apparently noticed that the prospective juror's body language demonstrated that he was not comprehending everything that was happening. In addition, the court expressed its concern that the hearing impairment was likely to be more problematic in this case because, in its experience, child witnesses tended to be more soft-spoken than adults. Defense counsel did not contest any of these conclusions.

It is also significant that, aside from the panelist's own suggestion that he remain in the front row, the court was not asked to offer any other reasonable accommodation that may have adequately assuaged the concerns about the prospective juror's ability to understand the proceedings and fulfill the functions of a trial juror. The record also does not reveal whether any type of audio equipment for the hearing impaired was available in the courthouse or whether venire member 1405 would have been willing to use such a device. Therefore, this case is not akin to *Guzman*, where the prospective juror confirmed that a sign language interpreter would allow him to follow the proceedings verbatim. In the absence of some suggestion for reasonably addressing the concerns about venire member 1405, we cannot fault the trial court for failing to order an accommodation sua sponte.[4]

---

4. To the extent defendant claims that the Americans with Disabilities Act (*see* 42 USC § 12101 *et seq.*) required the trial court to provide a reasonable

We must emphasize, however, that a better course would have been for Supreme Court to take steps on its own accord to inquire about the prospective juror's auditory limitations and discuss possible accommodation. It is imperative that the privilege and duty of jury service be made available to all eligible individuals—regardless of disability—who are capable of performing this civic function. For this reason, a judge should endeavor to make a reasonable and tactful inquiry of any prospective juror who appears to have a hearing impairment and consider offering to provide an assistive amplification device or some other appropriate accommodation available in our court system.

## III

■ Defendant's remaining contentions do not require reversal. He argues that he was deprived of a fair trial because Investigator DuFour and Caseworker Schultz opined that the victim was credible. Although this type of testimony was improper (*see e.g. People v Kozlowski*, 11 NY3d 223, 240 [2008], *cert denied* 556 US —, 129 S Ct 2775 [2009]; *People v Ciaccio*, 47 NY2d 431, 439 [1979]), the trial court sustained an objection before DuFour answered, no curative instruction was requested and the court subsequently directed the jury to disregard such impermissible testimony—an instruction that we assume was followed (*see People v Baker*, 14 NY3d 266, 274 [2010]). As for Schultz, defense counsel opened the door to the prosecutor asking certain questions about the caseworker's ability to gauge the victim's veracity, but arguably not so wide as to allow Schultz to state his ultimate conclusion regarding Jane's credibility. Nevertheless, the error was harmless because there is no significant probability that the jury would have acquitted defendant if Schultz had not provided the opinion testimony (*see e.g. People v Diaz*, 15 NY3d 40, 49 [2010]; *People v Crimmins*, 36 NY2d 230, 240-241 [1975]). For this reason, we also reject defendant's preserved challenges to remarks by the prosecutor that strayed beyond the bounds of permissible rhetoric and advocacy. Finally, on this record, defendant failed to establish that he was denied meaningful representation (*see generally People v Hobot*, 84 NY2d 1021, 1022 [1995]).

Accordingly, the order of the Appellate Division should be affirmed.

---

accommodation to venire member 1405, that contention is not preserved for review.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order affirmed.