Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

——

Argued November 17, 2006      Decided April 13, 2007

No. 04-3082 & 04-3090

UNITED STATES OF AMERICA,
APPELLANT/CROSS-APPELLEE

v.

DWIGHT W. WATSON,
APPELLEE/CROSS-APPELLANT

——

Appeals from the United States District Court
for the District of Columbia
(No. 03cr00146-01)

——

*Roy W. McLeese, III*, Assistant U.S. Attorney, argued the cause for appellant in 04-3082 and cross-appellee in 04-3090. With him on the briefs were *Jeffrey A. Taylor*, U.S. Attorney, and *Jay I. Bratt*, Attorney.  *David B. Goodhand*, Assistant U.S. Attorney, entered an appearance.

*A. J. Kramer*, Federal Public Defender, argued the cause and filed the briefs for appellee in 04-3082 and cross-appellant in 04-3090.

Before: GINSBURG, *Chief Judge*, and RANDOLPH and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The principal question in this appeal is whether the prosecutor's peremptory challenge of two visually impaired ("blind") jurors was lawful under the rule of *Batson v. Kentucky*, 476 U.S. 79 (1986). Watson contends that the rule established in *Batson* requiring heightened scrutiny of peremptory challenges on the basis of race should be extended to the blind in view of the long history of prejudice and discrimination against the disabled and the Supreme Court's suggestion in *Tennessee v. Lane*, 541 U.S. 509, 524 & n.9, 525 & n.14 (2004), that jury service is a fundamental right. We conclude, in light of Supreme Court precedent holding that disabled persons are not a suspect class to which a heightened degree of scrutiny attaches, that this contention must fail. Assuming peremptory challenges of blind jurors are subject to rational basis review, we conclude that the prosecutor's explanation was rational. However, because the district court plainly erred upon resentencing Watson, we vacate the sentence pursuant to the government's cross-appeal and remand the case to the district court for resentencing.

**I.**

Protesting the treatment of tobacco farmers by the government, Dwight W. Watson drove his tractor, along with a jeep and a trailer holding a metal box into the pond at Constitution Avenue Gardens and remained there for two days in March 2003. At one point, Watson drove around the perimeter of the pond, causing a three-and-a-half-foot wave. He also drove his tractor onto an island in the middle of the pond and moved the bucket on the tractor up and down, smashing it

into the island. In response to questioning by Park Service employees, Watson stated that the metal box on the trailer contained organophosphates, a type of chemical which he implied were explosives. Watson repeatedly stated that he was willing to die for his cause.

Watson was indicted for threatening and conveying false information concerning the use of an explosive, in violation of 18 U.S.C. § 844(e) (Count One), and destruction of government property, in violation of 18 U.S.C. § 1361 (Count Two). During jury selection, one of the potential jurors informed the district court that he was legally blind and was supposed to have brought a note from his doctor but that he was willing to serve. A second potential juror was also blind. The prosecutor exercised two of the government's six peremptory challenges to strike the blind men from the prospective jury. *See* FED. R. CRIM. P. 24(b)(2). In response to an objection by defense counsel, based on an analogy to *Batson*, the prosecutor indicated concern about having blind persons on the jury in light of the visual materials in the government's case-in-chief. The district court agreed that there was a substantial amount of visual evidence in the government's case and overruled the objection. The jury convicted Watson on both counts.

The district court sentenced Watson to concurrent sentences on each count of seventy-two months' imprisonment and to three years' supervised release and ordered him to pay restitution of $5,168.20 for the damage he had caused and a special assessment of $200. The following day the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004), and Watson subsequently moved for reconsideration of his sentence. After concluding that Watson's sentence had been unconstitutionally enhanced by the addition of fourteen points as a result of factual findings that were not made by the jury, the district court resentenced Watson to concurrent terms of sixteen

months' imprisonment and three years' supervised release and ordered him to make restitution and pay a special assessment.

Watson appeals the judgment of conviction, and the government cross appeals the sentence.

## II.

In *Batson*, the Supreme Court reaffirmed the principle, enunciated as early as 1880 in *Strauder v. West Virginia*, 100 U.S. 303 (1880), that the State denies an African-American defendant's rights protected by the Equal Protection Clause of the Fourteenth Amendment "when it puts him on trial before a jury from which members of his race have been purposefully excluded." *Batson*, 476 U.S. at 85 (citing *Strauder*, 100 U.S. at 310). *Strauder* involved a state statute qualifying only white people for jury duty and thus contravened one of the central purposes of the Fourteenth Amendment: "exemption from unfriendly legislation against [African Americans]." *Strauder*, 100 U.S. at 308; *see id.* at 305-08. Over the years the Court addressed various other means by which African Americans had been excluded from jury service. In *Swain v. Alabama*, 380 U.S. 202, 223-24 (1965), the Supreme Court held that in the absence of a statutory bar, evidence of systemic exclusion of African Americans through peremptory challenges over a period of time could also demonstrate a violation of the Equal Protection Clause. In *Batson*, the Supreme Court overruled *Swain* to the extent of holding that a defendant could establish a prima facie case of purposeful discrimination based solely on evidence of the prosecutor's exercise of peremptory challenges in his own case. *Batson*, 476 U.S. at 95. The Court also shifted the burden to the government to present a race-neutral explanation related to the particular case for the challenges. *Id.* at 97-98. If the government offers such an explanation, the trial judge then must decide whether the defendant has proved purposeful racial

discrimination. *Id.* at 98; *see Hernandez v. New York*, 500 U.S. 352, 358-59 (1991). The Court explained that "the State may not draw up its jury lists pursuant to neutral procedures but then resort to discrimination at other stages in the selection process." *Batson*, 476 U.S. at 88 (citations omitted) (internal quotation marks omitted).

In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 128-29 (1994), the Supreme Court extended *Batson* to the government's exercise of peremptory challenges on the basis of gender. The Court observed that "with respect to jury service, African-Americans and women share a history of total exclusion," *id.* at 136, and recounted the "long and unfortunate history of sex discrimination," *id.* (internal quotation marks omitted) (quoting *Frontiero v. Richardson*, 411 U.S. 677, 684 (1973)); *see id.* at 131-34. Noting that heightened scrutiny applies to all gender-based classifications because of "the real danger that government policies that professedly are based on reasonable considerations in fact may be reflective of 'archaic and overbroad' generalizations about gender," *id.* at 135 (quoting *Schlesinger v. Ballard*, 419 U.S. 498, 508 (1975)), "or based on 'outdated misconceptions concerning the role of females in the home rather than in the marketplace and world of ideas,'" *id.* (internal quotation marks omitted) (quoting *Craig v. Boren*, 429 U.S. 190, 198-99 (1976)), the Supreme Court concluded that discrimination on the basis of gender in jury selection did not "substantially further[] the State's legitimate interest in achieving a fair and impartial trial," *id.* at 136-37; *see id.* 136-38. "As with race," the court reasoned, "the 'core guarantee of equal protection, ensuring citizens that their State will not discriminate . . . , would be meaningless were we to approve the exclusion of jurors on the basis of . . . assumptions [that] arise solely from the jurors' [gender].'" *Id.* at 146 (first omission in original) (second alternation in original) (quoting *Batson*, 476 U.S. at 97-98). A member of a class entitled to heightened

scrutiny therefore receives protection under the rule established in *Batson*.

Disability, by contrast, has been accorded no heightened scrutiny by the Supreme Court. In *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 442-46 (1985), the Supreme Court declined to treat the mentally retarded as a suspect class, observing that disability may legitimately be taken into account by the States in a wide range of situations. Although race and gender distinctions rarely constituted justifiable grounds for differential treatment, *see id.* at 440-41, the Court explained:

> [T]hose who are mentally retarded have a reduced ability to cope with and function in the everyday world. . . . They are thus different, immutably so, in relevant respects, and the States' interest in dealing with and providing for them is plainly a legitimate one. . . . [L]egislation [] singling out the retarded for special treatment reflects the real and undeniable differences between the retarded and others. That a civilized and decent society expects and approves such legislation indicates that governmental consideration of those differences in the vast majority of situations is not only legitimate but also desirable.

*Id.* at 442-44. In other words, "the wide variation in the abilities and needs of the retarded themselves [means] governmental bodies must have a certain amount of flexibility and freedom from judicial oversight in shaping and limiting their remedial efforts." *Id.* at 445. Noting that federal and state governments had recently responded to the needs of the mentally retarded, the Court concluded that disabled individuals did not constitute a powerless class, *id.* at 443-46, and declined to presume that any classification drawn on the basis of disability was rooted in unconstitutional discrimination, *id.* at 446.

In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 366-68 (2001), the Supreme Court reaffirmed that classifications based on disability are subject only to rational basis review. Quoting from *Cleburne*, the Court explained that "if the large and amorphous class of the mentally retarded were deemed quasi-suspect . . ., it would be difficult to find a principled way to distinguish a variety of other groups who have perhaps immutable disabilities . . . and who can claim some degree of prejudice from at least part of the public at large." *Id.* at 366 (internal quotation marks omitted) (quoting *Cleburne*, 473 U.S. at 445). Reasoning from *Cleburne*, the Court concluded that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational." *Id.* at 367. Concluding that Congress's action was not supported by a relevant history and pattern of constitutional violations, the Court sustained the States' Eleventh Amendment immunity to suits for damages under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117. *Garrett*, 531 U.S. at 374.

From this precedent, it would follow that peremptory challenges of blind jurors are not subject to heightened scrutiny. The Equal Protection Clause affords a prospective juror a right not to be excluded from a particular jury on the basis of race or gender, *see Powers v. Ohio*, 499 U.S. 400, 409 (1991); *J.E.B.*, 511 U.S. at 128-29, because discrimination on these grounds strikes at the "core guarantee of equal protection," *J.E.B.*, 511 U.S. at 146 (internal quotation mark omitted), and is rarely justifiable, *see Cleburne*, 473 U.S. at 440-41. By contrast, the Supreme Court has declined to treat the disabled as a suspect class in recognition of the reality that the States may have legitimate reasons for treating differently persons whose disabilities reduce their ability to perform certain functions. *See Garrett*, 531 U.S. at 366-67; *Cleburne*, 473 U.S. at 442-46.

Watson seeks extension of the *Batson* rule to the blind, however, on the ground that in *Lane* the Supreme Court recognized that States deprived disabled individuals of a fundamental right by excluding them from jury service. *See Lane*, 541 U.S. at 524 & n.9, 525 & n.14. In *Lane*, the Court observed that Title II of the ADA was enacted "against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights." *Id.* at 524. The Court explained that Title II addressed the deprivation of certain "basic constitutional guarantees, infringements of which are subject to more searching judicial review," *id.* at 522-23, including "the right of access to the courts at issue in this case,[1] [which is] protected by the Due Process Clause of the Fourteenth Amendment," *id.* at 523. The Court noted, among other examples, that many States had prohibited disabled persons from serving as jurors. *Id.* at 524 & n.9, 525 & n.14. In view of the significant evidence of discrimination against the disabled, *see id.* at 524-27, the Court determined that Title II exhibited "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end," *id.* at 520 (internal quotation marks omitted) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)); *see id.* at 531, and therefore concluded that Congress had validly abrogated the States' immunity under the Eleventh Amendment, *id.* at 514-15, 533-34.

*Lane* is not as helpful to Watson as he suggests. In addressing the disabled generally, the Supreme Court in *Lane* stated that "classifications based on disability violate [the

---

[1] The respondents in *Lane*, paraplegics who used wheelchairs, cited the physical barriers they faced in accessing courthouses, such as the absence of elevators. *Id*. at 513-14.

Fourteenth Amendment only] if they lack a rational relationship to a legitimate governmental purpose." *Lane*, 541 U.S. at 522; *see Garrett*, 531 U.S. at 365-68. As examples of such violations, the Court referenced absolute bars to jury service by disabled individuals and discretionary bars invoked by trial judges. *See Lane,* 541 U.S. at 524 & n.9, 525 & n.14 (citing Mich. Comp. Laws Ann. § 729.204; Tenn. Code Ann. § 22-2-304(c) (1994); *Pomerantz v. County of Los Angeles*, 674 F.2d 1288, 1289 (9th Cir. 1982); *Galloway v. Superior Court of District of Columbia*, 816 F. Supp. 12, 14 (D.D.C. 1993); *DeLong v. Brumbaugh*, 703 F. Supp. 399, 405 (W.D. Pa. 1989)). It also noted a state case that involved a peremptory challenge under the State constitution's equal protection guarantee that was decided under rational basis review. *See id.* at 525 n.14 (citing *People v. Green*, 561 N.Y.S.2d 130, 133 (County Ct. 1990)). The Court's reasoning in *Lane* was thus relevant to demonstrating that categorical exclusions from jury service possibly implicated the denial of fundamental rights, but does not support Watson's contention that the exercise of peremptory challenges of individual jurors on the basis of disability related to the particular case triggers heightened scrutiny or violates *Batson*. Even were we to interpret *Lane* as recognizing that individual exclusions of prospective jurors on a case-by-case basis because of their disability implicate fundamental rights, it cannot be that only the blind have this fundamental right, and Watson fails to explain why, under his interpretation of *Lane*, heightened scrutiny would not extend to all peremptory challenges of disabled persons or indeed of all persons.

For these reasons, we find no basis for applying heightened scrutiny to peremptory challenges of blind jurors.

## III.

Alternatively Watson contends that the prosecutor's

peremptory strikes were not rational because the charges against him did not rely on visual evidence and to the extent the government chose to introduce such evidence it was, by reason of technical defects, virtually useless to the jury. The Supreme Court suggested, prior to *Batson*, that "[t]he essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *Swain*, 380 U.S. at 220. The government now maintains that any peremptory challenge is permissible so long as it is not exercised on grounds that trigger heightened scrutiny under the Equal Protection Clause. It relies on *Purkett v. Elem*, 514 U.S. 765, 768-69 (1995), which noted that a "legitimate reason" for exercising a challenge need not make sense. Although suggestive, *Purkett* is not dispositive. The Court also noted that the reason given could not deny equal protection and its analysis focused on whether an irrational justification was race-neutral for *Batson* purposes, *see id.* at 769; it did not consider whether an irrational justification would itself violate equal protection.

Watson's case is in much the same posture as that in *United States v. Harris*, 197 F.3d 870 (7th Cir. 1999), where the Seventh Circuit applied rational basis review, relying on the statement in *Batson* that "the State's privilege to strike individual jurors through peremptory challenges[] is subject to the commands of the Equal Protection Clause." *Id.* at 873 (alteration in original) (quoting *Batson*, 476 U.S. at 89); *see Purkett*, 514 U.S. at 769. Watson, like Ms. Harris, contests the rationality of the prosecutor's strikes of the excluded jurors. *See Harris*, 197 F.3d at 876. The Seventh Circuit reasoned that "[i]f the government had struck [a disabled juror] because of an irrational animosity toward or fear of disabled people, this would not be a legitimate reason for excluding her from the jury." *Id.*; *see Cleburne*, 473 U.S. at 450.

It is unnecessary to decide whether the Seventh Circuit was correct to apply rational basis review because we conclude that the prosecutor's use of peremptory challenges was rational. The prosecutor explained: "[T]hese two [blind] jurors can cause the government a concern because a substantial amount of the government's evidence is either photographs or videos, the types of things, for the juror to understand the full impact, the juror must see." Although the two videotapes in Watson's case were of poor quality, one was still shown to the jury and there is no evidence that the quality was so poor that the footage was not visible. Other visual evidence included multiple photographs of Constitution Avenue Gardens and the surrounding area, Watson's tractor and its location in the Gardens, items found in the tractor, and the damage caused to the property. Watson counters that the photographs and videotapes were of minimal importance to the government's case, that the threats charge was based solely upon Watson's statements — some of which were recorded on audio tapes — and that the damage to public property charge was described in detail by several witnesses.

The rationality of the prosecutor's peremptory challenges cannot rest on the evaluation of the defense of the evidence needed by the government to prove its case, much less on tactical decisions yet to be made by the defense at trial, including whether to object to any of the government's evidence. Watson may consider the prosecutor's understanding of a blind person's capability to observe outdated,[2] but it is not necessarily irrational

---

[2] *See* D. Nolan Kaiser, *Juries, Blindness, and the Juror Function*, 60 CHI.-KENT L. REV. 191, 199-200 (1984); D. Nolan Kaiser, *Just Justice: A Reply to Mr. McConnell*, 60 CHI.-KENT L. REV. 215, 216-17 (1984); *see also* Nancy Lawler Dickhute, *Jury Duty for the Blind in the Time of Reasonable Accommodations: The ADA's Interface with a Litigant's Right to a Fair Trial*, 32 CREIGHTON L. REV. 849, 855-56, 880 (1999).

to think that a person is likely to acquire a more accurate understanding of a scene by seeing it rather than merely hearing about it.[3] Defense counsel offered no basis on which the district court could have found that the prosecutor's peremptory strikes were based on a vague, undifferentiated fear that blind persons were incapable of serving as jurors. Counsel proffered no expert opinion, even in secondary form, that a blind juror would be able to fully assess the strengths and weaknesses of the government's visual evidence. Nor did counsel suggest a means of accommodating blind jurors, much less request that the government provide an accommodation by presenting, for example, descriptive oral testimony of the scenes and events depicted in the videotapes. *See, e.g.*, *Galloway*, 816 F. Supp. at 17-18 & n.11; Dickhute, *supra*, at 870-72 (citing *Galloway*, 816 F. Supp. at 17-18 & n.11; *People v. Caldwell*, 603 N.Y.S.2d 713, 714-16 (N.Y. Crim. Ct. 1993), *aff'd*, 661 N.Y.S.2d 436 (1997); AMERICAN BAR ASS'N, INTO THE JURY BOX: A DISABILITY ACCOMMODATION GUIDE FOR STATE COURTS (1994)).

Therefore, because rational basis review is "highly[] deferential," *Brown v. City of Michigan City*, 462 F.3d 720, 733 (7th Cir. 2006) (quoting *Turner v. Glickman*, 207 F.3d 419, 426 (7th Cir. 2000)); *see also Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001); *Steffan v. Perry*, 41 F.3d 677, 685, 690 (D.C. Cir. 1994), we can only conclude that the prosecutor's explanation was sufficient to show that the peremptory challenges were rationally related to ensuring a fair trial for Watson. *See Harris*, 197 F.3d at 876. The visual evidence could add drama and meaning to the events underlying the indictment and render undeniable the serious disruption and the physical

---

[3] *See Lewinson v. Crews*, 282 N.Y.S.2d 83, 85-86 (N.Y. App. Div. 1967), *superseded by statute as noted in People v. Guzman*, 555 N.E.2d 259, 261-62 (N.Y. 1990); James G. McConnell, *Blind Justice or Just Blindness?*, 60 CHI.-KENT L. REV. 209, 212-14 (1984).

damage to public property that Watson had caused. The experienced district court acknowledged that there was considerable visual evidence in the government's case and there is nothing to suggest that it was included for the purpose of denying blind persons an opportunity to serve as jurors.

## IV.

In its cross appeal of Watson's sentence, the government contends that the district court committed the same error as occurred in *United States v. Fanfan*, 543 U.S. 220, 228-29 (2005), the companion case to *United States v. Booker*, 543 U.S. 220 (2005), where the district court failed to appreciate its authority to enhance a sentence based on factual findings other than those made by the jury. Following *Booker*'s instruction that district courts treat the Sentencing Guidelines as advisory, *id.* at 244-46, this court has instructed, albeit after Watson's resentencing, that district courts retain authority to impose a reasonable sentence within the statutory range based on factual findings by the jury, or admissions by the defendant, and may still find facts in determining the applicable Guidelines range, s*ee United States v. Coles*, 403 F.3d 764, 768-69 (D.C. Cir. 2005). Watson's objection that the government failed to preserve its *Booker* objection by presciently arguing in the district court that the Guidelines should be considered advisory is of little moment. Even under plain error review, this court has emphasized the importance that a sentence not have been affected by the error, *see United States v. Saro*, 24 F.3d 283, 288 (D.C. Cir. 1994), and that is all the government seeks in its cross-appeal. The district court plainly erred by failing to appreciate the sentencing authority that it retained after *Booker*.

Therefore, we must remand the case for resentencing. The record suggests that the district court intended to sentence Watson close to the upper limits of its authority. *See United*

14

*States v. Simpson*, 430 F.3d 1177, 1184 (D.C. Cir. 2005). The district court initially sentenced Watson at the upper end of the sentencing range, stating that the sentence was intended to deter others who might be tempted to act as Watson had. Watson does not dispute that the district court, in resentencing him, imposed what it believed was the maximum lawful sentence. Although the sentencing judge has since retired and the original transcripts of Watson's character witnesses are unavailable, the case will be assigned to another district court judge and Watson may seek leave to present character evidence and to supplement that evidence in view of the passage of time. At oral argument, the government conceded that the district court will have authority to reconsider the enhancement factors and to allow Watson to present character evidence again. The district court will need as well to give due consideration to the fact that Watson likely has completed serving his sixteen months of imprisonment.

Accordingly, we affirm the judgment of conviction and remand the case to the district court for resentencing.