Filed 11/7/22

# <u>CERTIFIED FOR PUBLICATION</u>

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ZULMA UNZUETA, | B313215 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC495137) |
| v. | |
| ASMIK AKOPYAN, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Anthony J. Mohr, Judge.  Reversed and remanded with instructions.

McMurray Henriks and Yana G. Henriks for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Matthew S. Levinson; Packer, O'Leary & Corson, Robert B. Packer and Paul M. Corson for Defendant and Respondent.

_____

Zulma Unzueta appeals from a judgment entered in favor of defendant Asmik Akopyan, M.D., on Unzueta's action for medical malpractice after the trial court denied her motion under *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*) following our remand in *Unzueta v. Akopyan* (2019) 42 Cal.App.5th 199 (*Unzueta I*).  In this appeal, we consider whether under California law an attorney may properly strike a prospective juror based on the disability of the juror's family member.  Historically *Batson/Wheeler* motions have been analyzed, as the trial court did here, in terms of whether the justification for excusing a prospective juror is race-neutral.  However, in 2015 the Legislature expanded the scope of cognizable groups protected under *Batson/Wheeler* by its enactment of Assembly Bill No. 87 (2015-2016 Reg. Sess.) § 1 (Assembly Bill 87), effective January 1, 2017.  Assembly Bill 87 amended Code of Civil Procedure section 231.5[1] to specify by reference to Government Code section 11135 that peremptory challenges cannot be used to excuse prospective jurors on the basis of their sex, race, color, religion, ancestry, national origin, ethnic group identification, age, mental and physical disability, medical condition, genetic information, marital status, or sexual orientation.  Nor can a peremptory challenge be based on the perception the juror possesses one of these characteristics or because of the juror's association with someone perceived to have one of these characteristics.

In *Unzueta I*, we concluded the trial court erred in denying Unzueta's *Batson/Wheeler* motion (initially made sua sponte by the court) after Dr. Akopyan's attorney exercised peremptory

---

[1]    Further undesignated references are to the Code of Civil Procedure.

challenges to six Hispanic[2] prospective jurors out of his seven total challenges.  (*Unzueta I*, at p. 202.)  We agreed with Unzueta that the court erred in not requiring defense counsel to offer nondiscriminatory reasons for his first four challenges that formed the basis of the trial court's prima facie finding of racial bias.  (*Id*. at p. 202.)  We conditionally reversed for the limited purpose of the court conducting the second and third steps of the *Batson/Wheeler* inquiry as to all six challenged Hispanic jurors and directed the court on remand to "require defense counsel to state his reasons for challenging the first four prospective jurors, and . . . [to] decide in light of the record as to all six jurors whether Unzueta has proved purposeful racial discrimination."  (*Unzueta I*, at pp. 202-203.)  We directed the court further that if

---

[2]     We refer to the prospective jurors as Hispanic, which is the term used by the trial court and counsel.  "Hispanic" is defined as "of, relating to, or being a person of Latin American descent and especially of Cuban, Mexican, or Puerto Rican origin living in the U.S.," or "of or relating to the people, speech, or culture of Spain." (Merriam-Webster's Online Dict. (2022) <https://www.merriam-webster.com/dictionary/hispanic> [as of November 7, 2022], archived at <https://perma.cc/4URQ-7PWJ>; see Cambridge English Dict. Online <https://dictionary.cambridge.org/us/dictionary/english/hispanic> [as of November 7, 2022], archived at <https://perma.cc/V5W4-J4VE> [defining "Hispanic" as "from or connected with Spanish-speaking countries, especially those in Latin America, or having parents or grandparents from these countries"].)  The term "Latinx" (a gender-neutral form of Latino and Latina), which is defined as "of, relating to, or marked by Latin American heritage," would alternatively describe the jurors.  (Merriam-Webster's Online Dict. (2020) <https://www.merriam-webster.com/dictionary/latinx> [as of November 7, 2022], archived at <https://perma.cc/Z2JX-D5WB>.)

it found Dr. Akopyan's challenges were permissible, it should reinstate the judgment. (*Id.* at p. 203.)

On remand, the trial court elicited justifications for the six prospective jurors at issue, which Dr. Akopyan's attorney provided. As to two of the jurors, Dr. Akopyan's attorney asserted they were excused because they had a family member who was disabled, and the attorney feared the family member's disability would cause the juror to be biased in favor of Unzueta, who alleged she became disabled as a result of Dr. Akopyan's professional negligence. The court found the justifications were "race-neutral," and after analyzing all the challenges, it denied the *Batson/Wheeler* motion and reinstated the judgment.

Unzueta argues in this appeal that Dr. Akopyan's striking of the two prospective jurors based on the disabilities of their family members was itself based on protected characteristics. Unzueta is correct. Dr. Akopyan's justification for excusal of the two jurors was race-neutral, but it was still impermissible under California law. We again reverse and order a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Underlying Case*

Unzueta alleged in her complaint that Dr. Akopyan, the anesthesiologist during the birth of her child, negligently administered an epidural injection that resulted in the paralysis of Unzueta's right leg below the knee. After a trial, the jury returned a special verdict for Dr. Akopyan, finding she was negligent in the care and treatment of Unzueta, but Dr. Akopyan's negligence was not "a substantial factor in causing harm" to Unzueta.

B.     *Jury Selection and the* Batson/Wheeler *Motion*

We described jury selection and the *Batson/Wheeler* motion in *Unzueta I, supra*, 42 Cal.App.5th at pages 208 through 210. On the second day of jury selection (February 7, 2017), Dr. Akopyan's attorney, Robert Packer, exercised peremptory challenges to excuse four Hispanic prospective jurors: R. Medina, J. Quintero, G. Henriquez, and R. Villarreal.

Medina was a civil engineering student, unmarried, without children, with no prior jury experience.

Quintero was a sanitation worker for the City of Los Angeles, was married with four adult children, and was raising one grandchild. He had served on four criminal and one civil juries, all of which reached verdicts. One of his children did not work because of a disability.

Henriquez was a child specialist, married, with no prior jury experience. Her husband was disabled and did not work. Henriquez had a pending workers' compensation case for an injury sustained in a workplace fall. She stated she would be able to distinguish between the standard of negligence at issue in Unzueta's case and the no-fault standard for workers' compensation.

Villareal was a children's social worker who supervised investigative teams responding to reports of child abuse. She had two adult children and no prior jury experience. As a supervisor, Villareal was responsible for deciding based on social workers' investigations whether to file a petition in juvenile court in cases of suspected abuse.

Unzueta exercised all six of her peremptory challenges; Dr. Akopyan accepted the panel without exercising her final two peremptory challenges. That day (February 7) the jury panel was sworn. On February 8 voir dire continued for the selection of the

5

alternate jurors. Packer exercised peremptory challenges on behalf of Dr. Akopyan to excuse three prospective jurors, two of whom were Hispanic: D. Zaldana and A. Marquez.

Zaldana was a broadcast engineer, married, with three adult children. He had experience on one civil jury, which reached a verdict. A relative of Zaldana underwent heart surgery and "had items left in him" as a result of the surgery. When asked whether he could be fair to the defense, Zaldana promised to "be as objective as I can be." Zaldana's father had developed symptoms of Parkinson's disease about two months after having an angiogram performed. Zaldana questioned whether the symptoms were brought on by the angiogram test.

Marquez was single and a sales associate at a hardware store, with no prior jury experience. He had previously broken an ankle, which disrupted his daily living for three or four months. After the injury, Marquez "sat at home."

After Packer exercised peremptory challenges to excuse D. Winfrey,[3] Zaldana, and Marquez, the trial court sua sponte made a *Batson/Wheeler* motion based on Packer's exercise of four peremptory challenges on February 7, all of which were directed to Hispanic jurors, and three peremptory challenges on February 8, two of which were directed to Hispanic jurors. The court directed Packer to justify his February 8 challenges to Zaldana and Marquez. Packer provided a justification for his excusal of Marquez, but not Zaldana. He explained Marquez was single, had no jury experience, and appeared "disinterested in the case." Packer excused him in part because he felt Marquez "was completely unknown to me compared to the other jurors." Packer

---

[3]     Unzueta does not contend Packer's peremptory challenge to Winfrey was made for an impermissible reason.

added that there were three Hispanic jurors on the panel as constituted.

Unzueta's attorney, Yana Henriks, then requested the court require Packer to provide justifications for his excusal of the four Hispanic jurors on February 7. The court denied the request, explaining "that water is under the bridge." The court denied the *Batson/Wheeler* motion, finding Packer had justified his use of peremptory challenges as to the alternate jurors. In Unzueta's subsequent motion for a new trial she argued the court erred in not requiring Packer to explain his justifications for removing the four Hispanic prospective jurors on February 7 and Zaldana on February 8. Packer explained he challenged Zaldana because it appeared Zaldana believed the cause of his father developing Parkinson's disease was his surgery. Packer did not provide justifications for his excusal of the first four jurors. The court denied Unzueta's new trial motion.

C.     *Unzueta I*

On appeal, Unzueta argued Dr. Akopyan's exercise of six of her seven peremptory challenges to excuse Hispanic prospective jurors was based on race and deprived Unzueta of her federal constitutional right to equal protection (*Batson, supra*, 476 U.S. at p. 88) and state constitutional right to a trial by a jury drawn from a representative cross-section of the community (*Wheeler, supra*, 22 Cal.3d at pp. 276-277). Unzueta asserted the trial court erred in failing to require Packer to provide justifications for his excusal of the four Hispanic jurors on the second day of jury selection. Dr. Akopyan responded that the first four jurors did not fall within the scope of the court's sua sponte motion, so no explanation was necessary. We concluded that because the court based its sua sponte *Batson/Wheeler*

motion on the excusal of all six prospective Hispanic jurors, "the court was required to elicit from Packer justifications for each of the six challenges forming the basis for the prima facie showing" of group bias. (*Unzueta I, supra*, 42 Cal.App.5th at p. 217.)

We conditionally reversed the judgment and remanded for the trial court to perform the second and third steps of the *Batson/Wheeler* inquiry. We explained, "In this case, although jury selection took place almost three years ago, . . . there is a transcript of the jury selection proceeding that will assist the trial court and parties in conducting a further *Batson/Wheeler* analysis. In addition, the parties' attorneys may still have their notes from the trial, which Packer referenced during his discussion of the reasons he challenged Marquez. On remand the trial court should require defense counsel to provide Packer's reasons for challenging the first four prospective jurors (Medina, Quintero, Henriquez, and Villarreal), evaluate the explanations, 'and decide whether [Unzueta] has proved purposeful racial discrimination.'" (*Unzueta I, supra*, 42 Cal.App.5th at p. 218.) We directed the court to grant a new trial if it was unable to make a reliable determination based on the passage of time or if it determined defense counsel exercised his peremptory challenges based on racial bias. If the six peremptory challenges were made for permissible reasons, the court should reinstate the judgment.[4] (*Ibid.*)

---

[4]     On remand, Unzueta filed a peremptory challenge to Judge Anthony J. Mohr under section 170.6. Dr. Akopyan filed a writ petition in which she argued section 170.6, subdivision (a)(2), which authorizes a peremptory challenge following a reversal on appeal where the trial court is assigned to conduct a new trial, does not authorize a challenge following a conditional reversal

D.     *The* Batson/Wheeler *Hearing on Remand*

On January 8, 2021 the superior court set a hearing before the trial court (Judge Mohr) on Unzueta's *Batson/Wheeler* motion for January 27, 2021, which was later continued to February 5.  At the outset of the February 5 hearing, Henriks requested the court address whether it had a sufficient recollection of the 2017 jury selection, noting that in *Unzueta I* we stated that if the trial court was unable to perform a *Batson/Wheeler* evaluation because of the passage of time, the court should grant the motion.  The court responded, "No problem.  And believe it or not, I did take notes, so it's not like I have no memory of that.  I'm looking at my notes as we speak, by the way; so the fact that a few years [passed] doesn't really make it impossible to recollect."  The court reviewed with counsel the challenges to each of the six jurors, hearing oral argument and having Packer read from the transcript of voir dire the relevant questioning of the jurors.

Packer stated as to Medina that she was a young student with no jury experience.  He noted Medina had requested deferral of her jury service for hardship reasons because she had four midterm examinations in the following three weeks.  Packer was concerned Medina was "disinterested" in the case and focused on her midterm examinations, so it would be difficult to concentrate

---

where the remand is for the purpose of requiring the trial court to reconsider a pretrial *Batson/Wheeler* motion.  We agreed and granted the petition, directing the superior court to vacate its order granting Unzueta's motion to disqualify and to enter a new order deferring a ruling on the motion until after resolution of the *Batson/Wheeler* inquiry. (*Akopyan v. Superior Court* (2020) 53 Cal.App.5th 1094, 1096, 1105.)

on the case.  After hearing argument, the court found Packer provided a race-neutral reason for striking Medina.

Packer stated as to Quintero that one of her four children was disabled.  Packer explained Unzueta was claiming a permanent disability, and Packer "felt that this particular juror may be too sympathetic to this particular plaintiff to make a reasonable decision on the evidence."  Henriks argued the fact the juror had a disabled child was not a sufficient reason to strike her.

After hearing argument, the court asked, "Is this truly a protected class?"  Packer responded that the only issue raised in the *Batson/Wheeler* motion was whether or not there was racial discrimination, not discrimination based on a disability.  He added, "This can't be raised for the first time now."  The court agreed, noting it had "never even thought about it till this moment, but it's a question."  After further argument, the court concluded as to Quintero, "Based on what we have here, I think the fact that this juror had a child who's disabled and the plaintiff is disabled, does provide a race-neutral reason for exercising a peremptory strike.  So I don't think the Quintero strike violates *Wheeler Batson*."

With respect to Henriquez, Packer explained he challenged the juror principally because her husband was disabled and unable to work, and he had an outstanding workers' compensation matter.  Packer argued these two aspects suggested Henriquez might be sympathetic to Unzueta's claim based on her claimed disability.  After hearing argument, the court found "the strike against Henriquez was not racially motivated.  There are race-neutral reasons, especially because of [the] disability of the husband."

Later in the hearing Henriks argued as to the family members of prospective jurors that "Government Code [section] 11135 specifically prohibits discrimination based on physical disability." She added that having a disability is "a protected class."

As to Villareal, Packer explained she was a supervisor with the County Department of Children and Family Services, and as part of her position would respond to child abuse notifications. Packer expressed a concern that would likely make her sympathetic to Unzueta, who claimed an injury due to medical malpractice. After hearing further argument, the court found there was not a "race-based reason for exercising this strike." The court added, "It's not the strongest of the group, but it's there."

The trial court then turned to the alternate jurors. With respect to Zaldana, Packer stated, as he had in the trial court, that the juror believed his father had developed Parkinson's disease as a result of an angiogram he had undergone, resulting in a shaky leg. In addition, a relative had an instrument left in him following a surgery. The juror was uncertain whether he could be fair. After hearing further argument, the court found the challenge to Zaldana was proper and not based on race. The trial court again found no *Batson/Wheeler* violation as to Marquez, accepting Packer's explanation Marquez "seemed to be disinterested and would rather not be on jury duty."[5]

---

[5] Throughout the hearing Henriks raised that she wanted to perform a comparative juror analysis, but she needed additional time to review the transcripts. The trial court responded that Henriks could have obtained the voir dire transcript and performed a comparative juror analysis before the hearing. The

11

Henriks requested the court consider the passage of Assembly Bill No. 3070 (2019-2020 Reg. Sess.), which limits the use of peremptory challenges under new section 231.7. However, the trial court declined to consider the new law, explaining the legislation would not take effect in civil trials until January 1, 2026.[6]

court denied a continuance, explaining, "Today is the hearing. I want to get through this. We don't have the time to put this thing over and have lengthy briefing which never would have occurred during the actual voir dire process."

[6] The trial court was correct. Section 231.7 took effect on January 1, 2021, but it provides "[t]his section shall not apply to civil cases." (*Id*., subd. (k).) Further, section 231.7, subdivision (n), provides, "This section shall remain in effect only until January 1, 2026, and as of that date is repealed." Effective January 1, 2026 a new version of section 231.7 will take effect, applicable to all jury trials. (*Id.,* subd. (i) ["This section applies in all jury trials . . . ."].) Subdivision (a) of the law effective January 1, 2026 (and the current version of section 231.7, subdivision (a), as to criminal jury trials), provides, "A party shall not use a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." Future section 231.7 also provides direction on how the court should evaluate the reasons provided to justify peremptory challenges. (*Id*., subd. (d).) And subdivision (e) of future section 231.7 lists reasons "presumed to be invalid." Future section 231.7 has a narrower scope of protected classes than section 231.5, for example, not including a juror's mental or physical disability. However, as the Legislative Counsel's Digest for Assembly Bill No. 3070 clarified, "[e]xisting law" (section 231.5) prohibits a party from using a peremptory

At the conclusion of the hearing, the trial court denied the *Batson/Wheeler* motion, explaining, "I think counsel has justified each of his peremptory strikes, some more strongly than others. Marquez and Villareal, you know, are a little weak, but I'm not prepared to say they're race-based. [¶] . . . [¶] I find no violation in this situation." The court found further "that the race-neutral explanations are credible, and I do accept them."

The trial court explained in its minute order, "The court concludes that counsel's peremptory challenges to each of the prospective jurors which were exercised during both days of jury selection were not based on the fact that the prospective jurors were Latinos or Latinas. Counsel articulated non-racial justifications for each, and the court accepts them. As further support for this conclusion, the court notes that the jury did contain Latinos and counsel did not exercise all of his peremptory challenges."

On February 16, 2021 the trial court entered an order denying the motion. On April 6, 2021 the court[7] reinstated the judgment previously entered on April 18, 2017. Unzueta timely appealed.

---

challenge to remove a prospective juror based on specified protected characteristics, including the mental or physical disability of the juror. (Legis. Counsel's Dig., Assem. Bill No. 3070 (2019-2020 Reg. Sess.) Stats. 2020, Summary Dig.); see Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3070 (2019-2020 Reg. Sess.) p. 6 [listing protected characteristics under current law, including disability].) The legislative history of Assembly Bill No. 3070 does not reflect an intent to limit the scope of protected classes under section 231.5.

[7] Judge Michael E. Whitaker signed the order.

13

## DISCUSSION

Unzueta contends the justifications Packer gave for striking prospective jurors Quintero and Henriquez—that they had family members who were disabled—were prohibited bases for excusing the jurors under California law. Unzueta is correct.[8]

"Peremptory challenges are a long-standing feature of civil and criminal adjudication. But the exercise of even a single peremptory challenge solely on the basis of race or ethnicity offends the guarantee of equal protection of the laws under the Fourteenth Amendment to the federal Constitution. (*Batson, supra*, 476 U.S. 79; [citation].) Such conduct [on the basis of race, ethnicity or other similar group bias] also violates a defendant's right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the state Constitution. (*Wheeler, supra*, 22 Cal.3d 258, 276-277.)" (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1157-1158 (*Gutierrez*); accord, *People v. Ramirez* (2022) 13 Cal.5th 997, 1087-1088 [excluding prospective jurors on the basis of race ""'violates both the equal protection clause of the United States Constitution and the right to trial by a jury drawn from a representative cross section of the community under article I, section 16 of the California Constitution"'"].)

---

[8] Dr. Akopyan contends Unzueta forfeited her argument that Packer's justifications based on the disability of the prospective jurors' family members were impermissible. We decline to find forfeiture. Although Henriks made this argument for the first time at the hearing on remand, Packer did not raise the disability of the prospective jurors' family members as the basis for his peremptory challenges until that hearing.

We employ a familiar three-step process in evaluating a *Batson/Wheeler* motion. "First, the party objecting to the strike must establish a prima facie case by showing facts sufficient to support an inference of discriminatory purpose. [Citation.] Second, if the objector succeeds in establishing a prima facie case, the burden shifts to the proponent of the strike to offer a permissible, nonbiased justification for the strike. [Citation.] Finally, if the proponent does offer a nonbiased justification, the trial court must decide whether that justification is genuine or instead whether impermissible discrimination in fact motivated the strike." (*People v. Reed* (2018) 4 Cal.5th 989, 999, footnote omitted; accord, *People v. Baker* (2021) 10 Cal.5th 1044, 1071.) The prohibition against the exercise of peremptory challenges to exclude prospective jurors on the basis of group bias applies to civil as well as criminal cases. (*Unzueta I, supra*, 42 Cal.App.5th at p. 212; *Di Donato v. Santini* (1991) 232 Cal.App.3d 721, 731; *Holley v. J & S Sweeping Co.* (1983) 143 Cal.App.3d 588, 592.)

"'Excluding even a single prospective juror for reasons impermissible under *Batson* and *Wheeler* requires reversal.'" (*People v. Baker, supra*, 10 Cal.5th at p. 1071; accord, *Gutierrez, supra*, 2 Cal.5th at p. 1158 ["Exclusion of even one prospective juror for reasons impermissible under *Batson* and *Wheeler* constitutes structural error, requiring reversal."].) Moreover, at the second step of the *Batson/Wheeler* analysis, the party that exercised the peremptory challenge cannot justify an allegedly impermissible challenge (here, to six Hispanic jurors) with a different impermissible justification (that two of the six had disabled family members). As discussed, once the objector makes a prima facie case of discrimination, the burden shifts to the party who exercised the peremptory challenge to provide "a permissible, nonbiased justification for the strike." (*People v.*

15

*Reed, supra*, 4 Cal.5th at p. 999; see *Gutierrez*, at p. 1158 ["To meet the second step's requirement, the opponent of the motion must provide 'a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges.'"].) Substituting one impermissible justification for another cannot meet this burden.

Where, as here, a trial court finds a prima facie showing of group bias but then denies the *Batson/Wheeler* motion based on an evaluation of the strike proponent's reasons for the challenges, "the reviewing court skips to the third [step] to determine whether the trial court properly credited the [proponent]'s reasons for challenging the prospective jurors in question." (*People v. Smith* (2018) 4 Cal.5th 1134, 1147.) As to the third step, "'[w]hen the trial court makes a sincere and reasoned effort to evaluate the [proffered] reasons, the reviewing court defers to its conclusions on appeal, and examines only whether substantial evidence supports them.'" (*People v. Baker, supra*, 10 Cal.5th at p. 1077; accord, *Smith*, at p. 1147.) In this case, however, the question on appeal is not whether Packer's justifications were genuine (we have no reason to believe they were not), but whether the justifications Packer provided for his excusal of Quintero and Henriquez were based on impermissible group bias under federal or California law. We independently review this question of law on the undisputed facts. (See *Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 658 ["when the issue is one of statutory interpretation, it presents a question of law that we review de novo"]; *McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 226 [interpretation of statutory provisions is reviewed de novo]; *California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208 [equal protection claim reviewed de novo].)

16

The United States Supreme Court has extended the reach of *Batson/Wheeler* motions to forbid the exercise of peremptory challenges to those based on gender. (See *J.E.B. v. Alabama ex rel. T.B.* (1994) 511 U.S. 127, 130 [the Equal Protection Clause of the United States Constitution also "forbids peremptory challenges on the basis of gender"].) And under the California Constitution, use of a peremptory challenge "on account of bias against an identifiable group distinguished on racial, religious, ethnic, or similar grounds" is impermissible and the proper subject of a *Batson/Wheeler* motion. (*Gutierrez, supra*, 2 Cal.5th at p. 1158; see *People v. Avila* (2006) 38 Cal.4th 491, 549; *Wheeler, supra*, 22 Cal.3d at p. 276 ["when a party presumes that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds we may call this 'group bias and peremptorily strikes all such persons for that reason alone, he not only upsets the demographic balance of the venire but frustrates the primary purpose of the representative cross-section requirement"].)

The question before us is whether a justification for a strike on the basis of a disability (or the disability of a family member) is a permissible nondiscriminatory reason to support excusal of a prospective juror at the second step of the *Batson/Wheeler* analysis. Under California law it is not.[9] In 2000 the Legislature

---

[9] The United States Supreme Court and federal courts have not extended *Batson/Wheeler* to peremptory challenges based on a prospective juror's disability. (See *U.S. v. Watson* (D.C. Cir. 2007) 483 F.3d 828, 829 [*Batson* did not prohibit use of peremptory challenges to strike two blind jurors because disabled persons are not suspect class and prosecutor's explanation for striking jurors based on disability was rational]; *United States v.*

17

enacted Assembly Bill No. 2418 (1999-2000 Reg. Sess.), which added former section 231.5 (Stats. 2000, ch. 43, § 3) governing peremptory challenges.  Former section 231.5 expanded the list of cognizable groups subject to a *Batson/Wheeler* motion by stating, "A party may not use a peremptory challenge to remove a prospective juror on the basis of an assumption that the prospective juror is biased merely because of his or her race, color, religion, sex, national origin, sexual orientation, or similar grounds."

In 2015 the Legislature expanded the list of cognizable groups by its enactment of Assembly Bill 87, effective January 1, 2017.  Section 231.5 now provides, "A party shall not use a peremptory challenge to remove a prospective juror on the basis of an assumption that the prospective juror is biased merely because of a characteristic listed or defined in Section 11135 of the Government Code, or similar grounds."  Government Code section 11135, subdivision (a), states in turn, "No person in the State of California shall, on the basis of sex, race, color, religion, ancestry, national origin, ethnic group identification, age, mental disability, physical disability, medical condition, genetic information, marital status, or sexual orientation, be unlawfully denied full and equal access to the benefits of, or be unlawfully

---

*Harris* (7th Cir. 1999) 197 F.3d 870, 876 ["If the government had struck [the juror] because of an irrational animosity toward or fear of disabled people, this would not be a legitimate reason for excluding her from the jury," but the government's use of a peremptory challenge was rationally related to provision of a fair trial and therefore did not violate the Equal Protection Clause].)  The California Supreme Court has not addressed the application of *Batson/Wheeler* to jurors based on their disability (or the disability of a family member).

18

subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." And Government Code section 11135, subdivision (d), provides, "The protected bases used in this section include a perception that a person has any of those characteristics or that the person is associated with a person who has, or is perceived to have, any of those characteristics."

These sweeping protections apply here. (See *People v. Armstrong* (2019) 6 Cal.5th 735, 765 [citing section 231.5, as well as *Batson* and *Wheeler*, in concluding "[p]eremptory challenges may not be used to exclude prospective jurors based on group membership such as race or gender"]; *People v. Duff* (2014) 58 Cal.4th 527, 544-545 [citing to section 231.5 in explaining limits on use of peremptory challenges].)

We construe section 231.5 and Government Code section 11135 together to prohibit use of peremptory challenges to excuse prospective jurors on the basis a person with whom the juror is associated has a disability. That is precisely what Packer did here in challenging Quintero because her child was disabled and Henriquez because her husband was disabled.[10] Dr. Akopyan counters that even if section 231.5 prohibited Packer from excusing prospective jurors on the basis of their disabilities, Quintero and Henriquez were not disabled, and thus,

---

[10]     We analyze Packer's justification based on disability as part of the second step of the *Batson/Wheeler* analysis. We note the same analysis would have applied as part of the first step of the analysis had the *Batson/Wheeler* challenge been based on excusal of jurors based on their disabilities or the disabilities of their family members.

they were not stricken "because of a characteristic" listed in Government Code section 11135.  We do not read section 231.5 so narrowly.

When interpreting a statute, "our core task . . . is to determine and give effect to the Legislature's underlying purpose in enacting the statutes at issue." (*McHugh, supra*, 12 Cal.5th at p. 227; accord, *Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 381.)  "We first consider the words of the statutes, as statutory language is generally the most reliable indicator of legislation's intended purpose.  [Citation.]  We consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme." (*McHugh*, at p. 227; accord, *Jarman*, at p. 381 ["'We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.'"].)

"'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.'" (*Jarman v. HCR ManorCare, Inc., supra*, 10 Cal.5th at p. 381.)  However, "[i]f the relevant statutory language is ambiguous, we look to appropriate extrinsic sources, including the legislative history, for further insights." (*McHugh, supra*, 12 Cal.5th at p. 227; accord, *Mendoza v. Fonseca McElroy Grinding Co., Inc.* (2021) 11 Cal.5th 1118, 1125 ["'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'"].)

Section 231.5 prohibits removal of a prospective juror on the assumption the juror is biased "merely because of a

20

characteristic listed or defined in" Government Code section 11135. It is true the characteristic of a person being disabled is *listed* in Government Code section 11135, subdivision (a). But Government Code section 11135, subdivision (d), *defines* the "protected bases" in subdivision (a) to include the person's association "with a person who has, or is perceived to have, any of those characteristics." We construe these three provisions together to mean a prospective juror is a member of a cognizable class for purposes of a *Batson/Wheeler* motion if the juror has or is perceived to have a listed characteristic in Government Code section 11135, subdivision (a), or if the juror is associated with a person who has or is perceived to have a listed characteristic under subdivision (d) of that section.

The legislative history of Assembly Bill 87 supports this construction. The bill, as introduced on January 7, 2015, amended section 231.5 to prohibit the use of a peremptory challenge to remove a prospective juror based on the assumption the juror is biased merely because of "a characteristic listed or defined in subdivision (a) of Section 11135 of the Government Code, or similar grounds." On June 1, 2015 the bill was amended to read as it does today, removing the reference to "subdivision (a)," and instead referring to a characteristic "defined in Section 11135 of the Government Code, or similar grounds." It is a reasonable construction of this change to encompass characteristics listed and defined pursuant to Government Code section 11135, subdivisions (a) and (d).

Further, as the Senate Rules Committee Office of Senate Floor Analyses, third reading analysis of Assembly Bill 87 explained (following the June 1, 2015 amendment), "This bill now seeks to expand this protection [under former section 231.5] by

prohibiting the use of a peremptory challenge to remove a prospective juror on the basis of any characteristic for which a state agency may not discriminate (i.e. race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, genetic information, or disability), or similar ground." (Sen. Rules Com., Off. Of Sen. Foor Analysis, 3d reading analysis of Ass. Bill No. 87, (2015-2016 Reg. Sess.) p. 4.) Government Code section 11135 prohibits discrimination by state agencies (or state-funded entities) on the basis of a listed characteristic, as well as on the basis of the person's association with someone who has or is perceived to have a listed characteristic. Thus, including within the scope of cognizable groups for purposes of a *Batson/Wheeler* motion prospective jurors whose family members have one of the listed characteristics is consistent with the legislative intent for Assembly Bill 87 to align cognizable groups for purposes of impermissible peremptory challenges with prohibited discrimination under Government Code section 11135.[11]

There is no dispute that the justifications Packer provided for excusing Quintero and Henriquez were their association with disabled family members. Packer stated that because one of Quintero's children was disabled, Packer "felt that this particular juror may be too sympathetic to this particular plaintiff to make

---

[11]     We recognize the legislative history does not directly address peremptory challenges on the basis of a prospective juror's association with a person with a listed characteristic. But the legislative history is clear that the intent of Assembly Bill 87 was to align the limitations on peremptory challenges with California law prohibiting other forms of discrimination by the state, a state agency, or entities funded by the state.

a reasonable decision on the evidence." And with respect to Henriquez, Packer explained the prospective juror's husband was disabled and had an outstanding workers' compensation matter, which would likely make her sympathetic to Unzueta.[12] The trial court concluded as to both prospective jurors that Packer had provided "race-neutral" reasons for exercising his peremptory strikes. The trial court was correct that the justifications were race-neutral, but the challenges were still discriminatory because they were based on the disabilities of the prospective jurors' family members. Accordingly, we reverse the judgment and order a new trial.

---

[12]  Dr. Akopyan argues on appeal that Packer challenged Quintero and Henriquez based on the fact they were unable to work as a result of the disability, not the disability itself. However, at the *Batson/Wheeler* hearing on remand, Packer focused specifically on the disability of the family members, not their inability to work. And further, the trial court in ruling on the motion likewise relied on the disability of the family members, not their inability to work.

## DISPOSITION

The judgment is reversed. On remand the trial court is to vacate its order denying the *Batson/Wheeler* motion and to enter a new order granting the motion and setting the matter for a new trial. Unzueta is entitled to her costs on appeal.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.